**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:17-CV-00714-LLK**

**KENNETH WHITLOCK**                                                                    **PLAINTIFF**

**v.**

**NANCY A. BERRYHILL, Acting Commissioner of Social Security**                **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Plaintiff's Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. Plaintiff's fact and law summary is at Docket # 18-1, and Defendant's fact and law summary is at Docket # 24. The matter is ripe for determination.

Plaintiff consented to the jurisdiction of Magistrate Judge Whalin to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 13). Following Magistrate Judge Whalin's retirement, the Court reassigned the matter to the undersigned Magistrate Judge for all further proceedings. (Docket # 23). Plaintiff has impliedly consented to the jurisdiction of the undersigned.[1]

In May 2016, the administrative law judge ("ALJ") found that Plaintiff is not disabled through the date of his decision. (Administrative Record ("AR"), pp. 27-39). In October 2017, the Appeals Council reversed the ALJ's decision, finding that Plaintiff became disabled on January 5, 2016 (his fifty-fifth birthday). (AR, pp. 6-10). The Appeals Council affirmed the ALJ's finding that Plaintiff is not disabled for the period prior to January 5, 2016. (*Id.*). The issue in this case, therefore, is whether the ALJ's decision that Plaintiff is not disabled prior to January 5, 2016, is supported by substantial evidence.

---

[1] *See Roell v. Withrow*, 538 U.S. 580, 590 (2003) (Implied consent found to be present where parties "voluntarily appeared to try the case before the Magistrate Judge," in part, to "depriv[e] parties of the luxury of waiting for the outcome before denying the magistrate judge's authority"); *Stevo v. Frasor*, 662 F.3d 880, 884 (7th Cir. 2011) (Upon case reassignment to a second magistrate judge, plaintiff's express consent to authority of first magistrate judge deemed implied consent to authority of second magistrate judge where plaintiff proceeded without objection); *Wilhelm v. Rotman*, 680 F.3d 1113, 1119-20 (9th Cir. 2012) (same).

Plaintiff presents two arguments. First, he argues that "the Appeals Council erred by denying benefits at step 5 of the sequential analysis without, at the very least, determining whether the light occupational base was 'significantly reduced' by the limitation in the RFC [residual functional capacity]." (Docket # 18-1, pp. 5-12). Second, he argues that "the Appeals Council also erred by failing altogether to consider the opinions of the SSA's [Social Security Administration's] non-examining psychological consultants and further erred by failing to account for all of Plaintiff's work-related mental limitations in his RFC finding." (Docket # 18-1, pp. 12-16).

For the reasons below, the first argument is unpersuasive, and the second argument is persuasive. Because the Commissioner erred in ignoring the medical opinions of her own psychological consultants, this matter will be REMANDED to the Commissioner for a new decision weighing those opinions.

### The Commissioner's final decision

At the administrative hearing, the ALJ asked the vocational expert (VE) to assume an individual having Plaintiff's age, education, and work experience, who can perform medium work, except that he can only occasionally stoop. The VE testified that such an individual, in fact, <u>cannot</u> perform medium work. (AR, p. 86). However, the individual can perform a significant number of light jobs in the national economy. (AR, pp. 84-87). Representative examples are: tagger (with 300,000 jobs nationally), garment sorter (200,000 jobs nationally), and inspector (400,000 jobs nationally). (*Id.*).

In his May 2016 decision, the ALJ found that Plaintiff can perform medium work with only occasionally stoop. (AR, p. 31). The ALJ denied Plaintiff's disability claim, finding that, although he can no longer perform his past relevant work, Plaintiff retains the ability (through the decision date) to perform a significant number of light jobs in the national economy (i.e., those identified by the VE). (AR, pp. 37-39). The ALJ cited Rule 203.22 of Appendix 2 of the regulations as a framework for decision-making. (AR, p. 38). Rule 203.22 contemplates an individual having a maximum sustained work capability for medium work and directs an ultimate finding of "not disabled." Regulations, Appendix 2.

The Appeals Council reversed the ALJ's decision, finding that Plaintiff became disabled on January 5, 2016, his fifty-fifth birthday. (AR, p. 8). The Appeals Council affirmed the ALJ's finding that, before January 5, 2016, Plaintiff was not disabled because he retained the ability to perform a significant number of light jobs in the national economy. (AR, p. 9).

In support of its reversal, the Appeals Council's accepted the ALJ's finding that Plaintiff can only occasionally stoop. (AR, p. 8). An individual who can only occasionally stoop has a maximum sustained work capacity for light work because "the considerable lifting required for the full range of medium work usually requires frequent bending-stooping." (*Id.*) (quoting Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6)). Beginning on January 5, 2016, Rule 202.06, which contemplates a maximum sustained work capability for light work, directs an ultimate finding of "disabled." (AR, p. 9).

### The Commissioner did not err in applying the Appendix 2 rules.

In addition to finding that Plaintiff can perform medium work with only occasional stooping, the ALJ found that he "must alternative the positions of sit and stand every 30 minutes." (AR, p. 31). In relying on Rule 203.22 as a framework for decision-making (AR, p. 38), the ALJ implicitly found that Plaintiff's previous work experience was skilled or semiskilled – skills not transferable. SSR 83-12, 1983 WL 31253, at *4, provides that, if an individual has no transferable work skills and must alternate periods of sitting and standing, the occupational base for light work may be significantly reduced.[2]

---

[2] Specifically, SSR 83-12, 1983 WL 31253, at *4, provides as follows:

> In some disability claims, the medical facts lead to an assessment of RFC [residual functional capacity] which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy -- typically professional and managerial ones -- in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled.

To the extent Plaintiff's position is that SSR 83-12 should be interpreted to mean that an individual who requires a sit/stand option is unable to perform either light of sedentary work, the Sixth Circuit long ago rejected that interpretation as "untenable" because it "neglects to mention the regulation's concluding sentence: '[i]n cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base.'" *Wiergowski v. Comm'r*, No. 95-2011, 1996 WL 520786, at *2 (6th Cir. 1996) (quoting SSR 83-12, 1983 WL 31253, at *4).

Plaintiff argues that a remand is required to determine (in light of the ALJ's finding that he has no transferable work skills and must alternate periods of sitting and standing) whether the light occupational base was significantly reduced. (Docket # 18-1, p. 5). In support of his argument, Plaintiff's presents four premises. First, because he has no transferable work skills and must alternate sitting and standing, SSR 83-12 indicates that the occupational base for light work may be significantly reduced. Second, if the occupational base for light work is significantly reduced, there can be no light jobs (existing in significant numbers in the national economy) he can perform. Third, if there are no light jobs he can perform, he is limited to (at most) sedentary work. Fourth, if Plaintiff is limited to sedentary work, Rule 201.14 applies and directs an ultimate finding of "disabled" for the period before January 5, 2016. (Docket # 18-1, p. 6).

The argument is unpersuasive because the second premise is false. The occupational base for light work may be significantly reduced, yet Plaintiff can still perform a significant number of light jobs in the national economy. *See, e.g., Wright v. Comm'r*, 321 F.3d 611, 615 (6th Cir. 2003) (Although Ms. Wright's "occupational base [for light work] is reduced by her [left-hand] limitation," she is still able to perform a significant number of light jobs in the national economy"); *Wiskur v. Comm'r*, No. 2:15-0050, 2016 WL 4541785, at *5 (M.D. Tenn. Aug. 31, 2016) ("The vocational expert testified … that the light

---

However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base.

occupational base was significantly eroded by the consideration that plaintiff could only perform jobs where she could alternate at will between sitting and standing, but that based on his professional experience, she could perform a number of [light] cashier, counter clerk, and customer service jobs existing in [significant numbers in] the national economy").

Plaintiff's argument is essentially the same one made by Ms. Rainey in *Rainey v. Comm'r*, No. 2:15-cv-00594-TFM, 2015 WL 5782071 (W.D. Penn. Oct. 1, 2015).  Like Plaintiff, Ms. Rainey had to alternate sitting and standing every 30 minutes.  "[B]ecause the ALJ 'received the assistance of a VE in considering the more precise question whether there are significant number of jobs in the economy that [Plaintiff] can perform,' he was not required to make 'specific findings concerning the erosion of the occupational base.'"  *Id.* at *4 (quoting *Boone v. Comm'r*, 353 F.3d 203, 210 (3d Cir. 2003)).  In other words, where the VE answered the more precise question of whether specific jobs exist in significant number in the national economy notwithstanding a particular limitation, the broader question of whether that limitation significantly reduces the occupational base (of which those jobs are a part) is moot.

Plaintiff's argument is also similar to the one made by Ms. Wright in *Wright v. Comm'r*, 321 F.3d 611 (6th Cir. 2003).  The ALJ found that Ms. Wright has the capacity to perform a range of light work reduced by her left-hand impairment.  Ms. Wright argued that, because she is not capable of doing all of the jobs in the light work category, the ALJ was obliged to drop her category down to sedentary and find her disabled pursuant to the applicable Appendix 2 rule for sedentary work.  "But that is not how the process work."  *Id.* at 615.  The vocational testimony supported the ALJ's finding that, although her "occupational base [for light work] is reduced by her [left-hand] limitation," Ms. Wright is still able to perform a significant number of light jobs in the national economy.  *Id.*

To the extent Plaintiff's position is that the ALJ's finding that he "requires the assistance of a cane" (AR, p. 32) or any other finding by the ALJ requires a remand to determine whether the occupational base is significantly reduced, the argument is unpersuasive for essentially the same reasons discussed above:

the fact that the VE identified a significant number of compatible light jobs in the national economy while taking that specific finding into account (AR, pp. 84-86) renders the occupational-base question moot.

**The Commissioner erred in ignoring the medical opinions
of her own psychological consultants.**

The Commissioner's nonexamining psychiatrist, Robert Estock, M.D., found, among other things, that Plaintiff "can maintain attention to a simple task for two hours without special supervision but not concentration for extended periods." (AR, p. 101). The Commissioner's nonexamining psychologist, Richard Rasche, Ph.D., found that Plaintiff "is able to follow and complete simple tasks, but will have more difficulty carrying out multi-step and detailed tasks for extended periods due to difficulties in attending and concentrating due to his anxiety" and "will have some limits (episodic interruptions) in persisting and working at a consistent pace in a competitive work environment due to psychologically-based symptoms" (AR, p. 134). The ALJ found and the vocational hypothetical reflects that Plaintiff can understand, remember, and carry out no more than "simple, short instructions." (AR, pp. 32, 85).

The Commissioner acknowledges that the ALJ erred in that his decision does not even mention the findings of Drs. Estock and Rasche. (Docket # 24, p. 4). <u>See</u> former[3] 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions of treating sources, nontreating sources, and other nonexamining sources who do work for us"); former[4] Social Security Ruling 96-6p, 1996 WL 374180, at *2 ("Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law

---

[3] 20 C.F.R. § 404.1527(f)(2)(ii) has been rescinded and does not apply to claims filed after March 27, 2017. Plaintiff filed his claims in 2013. (AR, p. 27).
[4] SSR 96-6p has been rescinded and does not apply to claims filed after March 27, 2017. Plaintiff filed his claims in 2013. (AR, p. 27).

judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions").

The Commissioner argues that the error of ignoring the opinions of Drs. Estock and Rasche was harmless because the ALJ effectively adopted their opinions and because the ALJ's mental RFC finding is consistent with those opinions. (*See* Docket # 24, pp. 5-6) (quoting *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004) for the proposition that reversal is unwarranted if "the Commissioner adopts the opinion of the ... source or makes findings consistent with the opinion"). The argument is unpersuasive because the ALJ's finding that Plaintiff can understand, remember, and carry out no more than "simple, short instructions" (AR, pp. 32, 85) does not adequately accommodate Dr. Estock's opinion that Plaintiff "can maintain attention to a simple task for two hours without special supervision but not concentration for extended periods" (AR, p. 101).

In *Ealy v. Comm'r*, 594 F.3d 504, 516 (6th Cir. 2010), the treating physician opined that Mr. Ealy is limited to "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical." The ALJ adopted this opinion but then streamlined the vocational hypothetical to include only a limitation to "simple repetitive tasks," with no mention of the two-hour persistence restriction. *Id.* The Sixth Circuit determined that the ALJ's hypothetical did not fully convey the limitations found by the ALJ. In other words, an ALJ's finding that a claimant is limited to simple, repetitive tasks does not accommodate a finding that he can persist for only two-hours at a time, where speed is not critical.

In this case, the ALJ's finding that Plaintiff can understand, remember, and carry out no more than "simple, short instructions" (AR, pp. 32, 85) does not accommodate Dr. Estock's finding that Plaintiff "can maintain attention to a simple task for two hours without special supervision but not concentration for

extended periods" (AR, p. 101).  Further, it is not apparent that an individual with the limitations described by Dr. Estock could perform the pace and quota requirements of the jobs of tagger, garment sorter, and inspector, which the ALJ found Plaintiff can perform.  (AR, pp. 38-39).

The Commissioner further argues that the error was harmless because the ALJ's decision "met the goal of … of the procedural safeguard … even though [the ALJ] has not complied with the terms of the regulation."  (Docket # 24, p. 7) (quoting *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).  Although violation of the procedural safeguard that required the ALJ to weigh the opinions of her own psychological consultants would have been harmless if the ALJ's decision had indirectly addressed those opinions and/or the ALJ's mental RFC findings were otherwise supported by substantial evidence, neither of these scenarios occurred here.  The ALJ's failure to provide any discussion of the opinions or otherwise provide an explanation for why he rejected them prevents the Court from conducting a meaningful review to determine whether substantial evidence supports the ALJ's decision.  As in *Rogers v. Comm'r*, 486 F.3d 234, 248 (6th Cir. 2007), it would have been "more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence.  It is absolutely essential for meaningful appellate review."

Additionally, Dr. Estock opined that Plaintiff "will need a flexible daily schedule," "all customary rest periods [should be] in roomy work places with a few familiar coworkers," and "[c]ontact with the public should be casual and criticism non-confronting."  (AR, pp. 101-02).  The ALJ found that Plaintiff "will have one to two unplanned absences from work per month," will require "few workplaces changes … in a low stress work environment," and will be able to "responded appropriately to occasional interaction with the general public, supervisors, and coworkers."  (AR, p. 32).  It is unclear that the ALJ's findings adequately accommodate Dr. Estock's opinions.

This case is similar to *Johnson v. Comm'r*, No. 1:09-CV-2959, 2010 WL 5559542 (N.D. Ohio Dec. 3, 2010), wherein the district court held that, in light of 20 C.F.R.  404.1527(f) and SSR 96-6p, the ALJ erred

in ignoring the opinions of the Commissioner's own nonexamining psychologists. The court rejected the Commissioner's argument that the error was harmless, within the framework of *Wilson v. Comm'r*, 378 F.3d 541 (6th Cir. 2004), because the opinions were consistent with the ALJ's mental RFC finding, in part, because "there is a body of case law supporting the proposition that hypotheticals limiting claimants to jobs entailing no more than simple, routine, and unskilled work are not adequate to convey moderate limitations in ability to concentrate, persist, and keep pace." *Id.* at *8 (citing *Ealy v. Comm'r*, 594 F.3d 504 (6th Cir. 2010)). *See also Molebash v. Comm'r*, No. 2:16-cv-869, 2017 WL 3473816 (S.D. Ohio Aug. 14, 2017) (Reversible error occurred when the ALJ ignored the opinions of the Commissioner's own nonexamining physicians).

**ORDER**

This matter is hereby REMANDED to the Commissioner for a new decision weighing the medical opinions of Drs. Estock and Rasche and reevaluating Plaintiff's mental RFC in light of those opinions, and for any further proceedings deemed necessary and appropriate by the Commissioner.

October 2, 2018

**Lanny King, Magistrate Judge**
**United States District Court**